**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, PATRICK COLLIGAN and PETER ANDREYEV,

     Plaintiffs,

     v.

STERLING DATA COMPANY LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,

     Defendants.

Civil Action No.: 1:25-cv-09963-HB

---

**PLAINTIFFS ATLAS DATA PRIVACY CORPORATION, PATRICK COLLIGAN AND PETER ANDREYEV'S BRIEF IN OPPOSITION TO DEFENDANT STERLING DATA COMPANY LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS**

---

**PORZIO, BROMBERG & NEWMAN, P.C.**
Vito A. Gagliardi, Jr., Esq.
Alfred R. Brunetti, Esq.
Sarah A. Wisniewski, Esq.
100 Southgate Parkway
Morristown, New Jersey 07960

**PEM LAW LLP**
Rajiv D. Parikh, Esq.
Kathleen Barnett Einhorn, Esq.
Jessica A. Merejo, Esq.
1 Boland Drive, Suite 101
West Orange, New Jersey 07052

Dated: December 19, 2025

*Counsel for Plaintiffs Atlas Data Privacy Corporation, Patrick Colligan and Peter Andreyev*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND .................................................................................. 1

LEGAL ARGUMENT ............................................................................................ 4

I.     DEFENDANT'S AS-APPLIED CHALLENGE TO DANIEL'S LAW IS MERITLESS AS DEFENDANT'S ARGUMENTS HAVE BEEN ANSWERED BY THIS COURT AND THERE IS NO FACTUAL RECORD TO SUPPORT DEFENDANT'S CLAIMS. .............................................. 4

A.    Defendant Is Not Entitled To First Amendment Political Speech Protections ..................................................................................... 4

B.    As Applied To Defendant, The Balance of Interests Weigh Strongly In Favor of Upholding Daniel's Law. ................................................... 8

C.    Even Applying Strict Scrutiny, Daniel's Law Survives ................................. 11

1.    Daniel's Law serves a compelling State interest. ................................ 12

2.    Daniel's Law is narrowly tailored. ....................................................... 14

II.    PLAINTIFFS RELY ON THE OTHER ARGUMENTS ADVANCED IN OPPOSITION TO OTHER DEFENDANTS' MOTIONS TO DISMISS .................. 14

III.    IN THE ALTERNATIVE, DISCOVERY ON DEFENDANT'S AS-APPLIED CONSTITUTIONAL CHALLENGE SHOULD BE ORDERED ............................. 15

CONCLUSION ..................................................................................................... 17

CERTIFICATE OF SERVICE .............................................................................. 18

10095847

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................5

*Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322 (D.N.J. 2024) ...............................................................................4, 7, 9, 10, 11, 12, 14

*Atlas Data Privacy Corp. v. DM Group Inc.*, No. 1:24-cv-04075-HB ...................................14, 15

*Atlas Data Privacy Corp. v. Lightbox Parent, L.P.*, No. 1:24-cv-04105-HB (D.N.J.) (ECF No. 27)................................................................................14, 15

*Atlas Data Privacy Corp. v. Restoration of America*, 1:24-cv-04324-HB (D.N.J. Aug. 25, 2025) (ECF No. 71) .........................................................................15, 16

*Barr v. Am. Ass'n of Pol. Cons., Inc.*, 591 U.S. 610 (2020) ........................................................7

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ........................................................................8

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999)........................................................6

*Burns v. Thiokol Chem Corp.*, 483 F.2d 300 (5th Cir. 1973) .......................................................16

*Fed. Elec. Comm'n v. Ted Cruz for Senate*, 596 U.S. 289 (2022)...................................................6

*Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 677 F.3d 519 (3d Cir. 2012)......................................15

*Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 974 F.3d 408 (3d Cir. 2020)..................................15

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264 (4th Cir. 2013) ........................................................15

*Kratovil v. City of New Brunswick*, 261 N.J. 1 (2025)...................................7, 8, 10, 11, 12, 13, 14

*Maxo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022)...........................................................5

*Meyer v. Grant*, 486 U.S. 414 (1988) ..........................................................................5

*Ostergren v. Cuccinelli*, 615 F.3d 263 (4th Circ. 2010) ........................................................11

*Paul P v. Farmer*, 227 F.3d 98 (3d Cir. 2000)....................................................................9

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)....................................................16

*Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128 (3d Cir. 2010)..................................................5

*Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165 (4th Cir. 2009) ................................ 4, 15

*Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979) ................................................................. 8

*Snyder v. Phelps*, 562 U.S. 443 (2010) ............................................................................... 11

*The Fla. Star v. B.J.F.*, 491 U.S. 524 (1989) ............................................................... 4, 8, 10

*United States v. Marcavage*, 609 F.3d 264 (3d Cir. 2010) ............................................. 4

*Victaulic Co. v. Tieman*, 499 F.3d 227 (3d Cir. 2007) ................................................. 5

## STATUTES

*N.J.S.A.* 2A:158-21 ..................................................................................................... 8

*N.J.S.A.* 2C:20-31.1 ..................................................................................................... 7

*N.J.S.A.* 2C:20-31.1(b) to (c) ..................................................................................... 3

*N.J.S.A.* 56:8-166.1 ..................................................................................................... 7

*N.J.S.A.* 56:8-166.1(a) to (b) ..................................................................................... 3

*N.J.S.A.* 56:8-1661.(a)(1) ............................................................................................ 7

*N.J.S.A.* 56:8-166.1(d)(3) ........................................................................................... 2

*N.J.S.A.* 56:8-166.3 ............................................................................................. 2, 10, 14

## RULES

*Fed. R. Civ. P.* 12(b)(6) ............................................................................................... 5

*Fed. R. Civ. P.* 26(b) ................................................................................................... 16

Local Rule 7.1(d)(4) ..................................................................................................... 14

*N.J. Ct. R.* 2:15-8(a)(5), (6) ......................................................................................... 8

## OTHER AUTHORITIES

*S. Judiciary Comm. Statement to A. 1649* (Oct. 22, 2020) ....................................... 2, 13

10095847

## PRELIMINARY STATEMENT

Plaintiffs Atlas Data Privacy Corporation, Patrick Colligan and Peter Andreyev (collectively "Plaintiffs") submit this Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings (ECF No. 16-1) ("JOP Brief") filed by Defendant Sterling Data Company LLC. Defendant's motion asserts an array of recycled arguments that this Court has repeatedly rejected, in essence seeking reconsideration of prior decisions issued by this Court. Defendant's motion is premised on their assertion that, as a vendor for political entities, they are entitled to heightened protections under the First Amendment because they purport to facilitate their client's political speech. Defendant's motion seeks to gain heightened protections under the First Amendment without actually engaging in any political speech. Defendant continues by arguing that this Court should reverse its prior precedent and apply strict scrutiny to Daniel's Law as-applied to Defendant, because Defendant is engaged in political speech. Defendant's motion asserts circular arguments that, at their root, improperly expand the scope of political speech, and misinterpret applicable case law. Therefore, Plaintiffs respectfully submit that this Court should deny Defendant's Motion for Judgment on the Pleadings in its entirety, and in accordance with this Court's prior decisions.

## FACTUAL BACKGROUND

In July 2020, the 20-year-old son of a sitting New Jersey federal judge was murdered at the front door of the family's New Jersey home by a gunman posing as a FedEx delivery man. Compl. at ¶5. Authorities later found that the murderer had certain political and personal grievances against the judge and went to her home that day intending to kill her. *Id.* at ¶6. Instead, he murdered the judge's son and critically wounded her husband. *Id.* at ¶5. Investigators eventually connected this attack with the prior shooting of an attorney in California who was slain while answering his front door to pick up a supposed package from the same disguised gunman. *Id.* at ¶6. Authorities concluded that the shooter was disgruntled over legal cases with similar political and legal issues to what was pending

before the judge in New Jersey. *Ibid.* Critically, the murderer found the home addresses of his targets through various Internet people finder resources — the same kind of data broker services offered by the Defendant. *Id.* at ¶7.

In response to this horrific shooting, the State of New Jersey enacted Daniel's Law in November 2020 to protect current and former judges, prosecutors, law enforcement officers, and their family members (defined thereunder as "Covered Persons"). *Id.* at ¶8. The statute represents "legislative action directly related to, and intended to honor, Daniel Anderl, the son of a federal judge, who was shot and killed in July 2020 at the judge's family home by a person who had compiled a dossier of personal information about the judge, including the judge's home address."[1] The Legislature enacted Daniel's Law "to enhance the safety and security of certain public officials in the justice system," thereby enabling those officials to "carry out their official duties without fear of personal reprisal." *N.J.S.A.* 56:8-166.3.

Under Daniel's Law, any Covered Person may request that a data broker not "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer . . . [which] shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." *N.J.S.A.* 56:8-166.1(d)(3). The provisions of Daniel's Law at issue here apply only if an "authorized person" has taken specific steps to prevent the disclosure of a Covered Person's home address or unpublished home telephone number. *Id.* at (a). Indeed, the statute specifically states that effective "not later than ten business days following receipt" of the statutory notice, "a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person." *Id.* at (a)(1). Under

---

[1] *S. Judiciary Comm. Statement to A. 1649* (Oct. 22, 2020).

10095847

Daniel's Law, no nondisclosure obligation is imposed on a person or entity in possession of a Covered Person's home address or unpublished home telephone number if that person or entity has not received the notice, as required by the statute.  *N.J.S.A.* 56:8-166.1(a) to (b); *N.J.S.A.* 2C:20-31.1(b) to (c).

10095847

## LEGAL ARGUMENT

I.    **DEFENDANT'S AS-APPLIED CHALLENGE TO DANIEL'S LAW IS MERITLESS AS DEFENDANT'S ARGUMENTS HAVE BEEN ANSWERED BY THIS COURT AND THERE IS NO FACTUAL RECORD TO SUPPORT DEFENDANT'S CLAIMS.**

An as-applied challenge to the constitutionality of a statute "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). In this case, Defendant's as-applied challenge to Daniel's Law asserts that — despite this Court's prior ruling — Daniel's Law is subject to strict scrutiny and fails to pass constitutional muster, as it restricts Defendant's political speech. (ECF No. 16-1 at 24-25). Defendant's as-applied challenge to Daniel's Law fails for three reasons. First, Defendant is not entitled to heightened protections for political speech, as they do not engage in political speech; Defendant hosts a website that offers data analytic services to campaigns, committees, and causes that engage in political speech. (ECF No. 15 at ¶38). Second, Defendant contends that this Court, in evaluating Defendant's as-applied challenge to Daniel's Law, should apply strict scrutiny. Defendant's argument ignores this Court's ruling that the *Florida Star* test applies, which is the law of the case. *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 336-37 (D.N.J. 2024) (citing *The Fla. Star v. B.J.F.*, 491 U.S. 524 (1989)). Third, even if this Court reverses its prior precedent, Daniel's Law satisfies strict scrutiny.

A.    **Defendant Is Not Entitled To First Amendment Political Speech Protections.**

As a preliminary matter, Defendant's as-applied challenge fails because there is no factual record from which the Court may assess how the law actually applies to Defendant. As-applied challenges to the constitutionality of a statute are "based on a developed factual record and the application of a statute to a specific person[.]" *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009). Here there is no factual record to assess the application of Daniel's Law to

4

Defendant. Defendant assumes that because it is a "vendor for political campaigns, committees, and causes" it engages in political speech, and therefore is entitled to the same heightened First Amendment protections as their clients. (ECF No. 16-1 at 25). These allegations, however, are not included in the Complaint, which must be taken as true for the purposes of a motion for judgment on the pleadings[2], nor are they subject to judicial notice. *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) ("private corporate websites, particularly when describing their own business" are not subject to judicial notice). Thus, there are no facts to support Defendant's argument that their as-applied challenge to Daniel's Law is entitled to heightened scrutiny for political speech.

Notwithstanding the lack of a factual record to support Defendant's motion, Defendant does not engage in political speech. Defendant states that they are a vendor for political campaigns, committees, and causes, providing data analytic services that improve the effectiveness of donor outreach. (ECF No. 15 at ¶38). On that basis alone, Defendant argues that they are engaged in political speech, all while failing to argue that home addresses and unpublished phone numbers concern any topic of political or social importance. (ECF No. 16-1 at 24-43). Defendant's argument seeks to expand the scope of what constitutes political speech, extending the doctrine to vendors who work with organizations or individuals engaged in political speech. Not everything that enables or facilities political speech, is itself political speech. Instead, heightened scrutiny for political speech is designed to protect only those "communications concerning political change[.]" *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988). Defendant, a website offering data analytics services to political fundraising efforts, does not itself engage in "communications concerning political change." *Ibid.*; *see also Maxo v. N.J.*

---

[2] A motion for judgement on the pleadings is reviewed under the same standard as a motion to dismiss for failure to state a claim under *Fed. R. Civ. P.* 12(b)(6). *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). In a analyzing a motion to dismiss for failure to state a claim, courts must accept as true the allegations in the complaint that are plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

10095847

*Sec'y of State*, 54 F.4ᵗʰ 124, 142 (3d Cir. 2022) (stating the Supreme Court has characterized the "lodestar for 'core political speech' as the involvement of 'interactive communication concerning political change.'") (quoting *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 186 (1999)). Any speech at issue is entirely the product of Defendant's clients, not Defendant.

Defendant cites to a variety of distinguishable cases to support the proposition that a data analytics vendor, like Defendant, may engage in political speech by way of their consumers. For example, Defendant attempts to analogize *Fed. Elec. Comm'n v. Ted Cruz for Senate*, 596 U.S. 289 (2022), to the present case. In *Ted Cruz*, the U.S. Supreme Court analyzed a provision of federal law which prevented political campaigns from repaying a candidate's personal loan to the campaign, with more than $250,000 of funds raised after election day. *Id.* at 293. The Court ultimately held that the law impermissibly burden political speech, because it imposed a penalty on candidates who provided their campaigns with large personal loans, thereby "robustly exercising their First Amendment right[s]." *Id.* at 303 (internal quotations omitted).

Unlike in *Ted Cruz*, Defendant is not a political candidate, campaign, committee, or cause. Instead, as detailed in Defendant's Answer to the Complaint, Defendant is a website that offers a data analytics tool which allows political organizations to improve the effectiveness of their fundraising campaigns. (ECF No. 15 at ¶38). Permitting Defendant to argue they are entitled to heightened protections under the First Amendment, merely because they provide services for individuals and entities who are engaged in political speech, opens a First Amendment Pandora's box. Under Defendant's interpretation of political speech, any vendors who work with an individual or entity engaged in political speech, however attenuated, can claim they are engaged in political speech by association. For example, Square, a point-of-sale system and payment processing platform, could argue that because a political campaign uses its technology to sell campaign merchandise, it is entitled

6

to heightened political speech protections under the First Amendment.  Such an interpretation blurs the lines regarding when heightened protections for political speech should apply.

Similarly, Defendant points to *Barr v. Am. Ass'n of Pol. Cons., Inc.*, 591 U.S. 610 (2020), to support the proposition that because Defendant's client's solicit for donations, the Court should review Defendant's as-applied challenge using strict scrutiny "even in the face of privacy considerations." (ECF No. 16-1 at 33).  The present case, however, deals with fundamentally different aspects of the First Amendment than were analyzed in *Barr*.  The U.S. Supreme Court in *Barr* upheld the Telephone Consumer Protection Act ("TCPA") under strict scrutiny, severing and invalidating an exception to the TCPA which permitted robocalls for government debt collection.  *Id.* at 613, 631.  The Court in *Barr*, however, did not address the *Florida Star* test, nor did it analyze the disclosure of private information.  *See id* at 613.

Ultimately, Defendant argues that Daniel's Law chills and restricts political speech, by restricting a political candidate from finding political donors and sending political messages.  (ECF No. 16-1 at 34).  Defendant's position overlooks three key facts.  First, Daniel's Law's restrictions are only triggered once "a covered person transmits to an entity written notice requesting non-disclosure." *We Inform*, 758 F.Supp.3d at 331(citing *N.J.S.A.* 56:8-1661.(a)(1)).  Daniel's Law is not an automatic restriction on speech.  *Kratovil*, 261 N.J. at 14 ("the statute's restrictions on disclosure of a covered person's home address and unpublished home telephone number do not go into effect until ten business days after the person from whom the authorized person is seeking nondisclosure receives notice in the form prescribed.") (internal quotation omitted).

Second, Daniel's Law protects the publication of a judge, prosecutor, or other law enforcement officer's home address or unpublished phone number.  *N.J.S.A.* 56:8-166.1; *N.J.S.A.* 2C:20-31.1.  Judges and prosecutors, however, are not permitted to engage in partisan political activities.  Code of

Jud. Conduct, Cannon 7(A)(4); *N.J. Ct. R.* 2:15-8(a)(5), (6); *N.J.S.A.* 2A:158-21.  The only category of Covered Persons that are ethically permitted to participate in partisan politics are law enforcement officers.  *Ibid.*  Therefore, despite Defendant's assertion to the contrary, the impact on Defendant's ability to facilitate fundraising for their clients is *de minimis.*  (ECF No. 16-1 at 34).

Third, Defendant hosts a website which offers data analytics services targeted at helping optimize political fundraising campaigns.  (ECF No. 15 at ¶38).  Defendant, therefore, acknowledges that their clients are engaged in political speech, not Defendant.  *Ibid.*  Defendant's clients send political messages and implement fundraising campaigns, not Defendant.  (ECF No. 16-1 at 34).  Defendant is a tool for political organizations, Defendant does not engage in political messaging on its own.  Daniel's Law does not prevent Defendant's clients from sending political messages or reaching out to potential donors.  The law simply restricts Defendant from publishing the home address and unpublished phone number of Covered Persons, after they receive a takedown notice.  *See* Compl. at ¶¶22-25.

## B.    As Applied To Defendant, The Balance of Interests Weigh Strongly In Favor of Upholding Daniel's Law.

In an unbroken line of cases that has developed since the U.S. Supreme Court's 1979 decision in *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979), the Supreme Court balances "[t]he tension between the right which the First Amendment accords to a free press, on the one hand, and the protections which various statutes and common-law doctrines accord to personal privacy against the publication of truthful information, on the other."  *Kratovil v. City of New Brunswick*, 261 N.J. 1, 16 (2025) (quoting *Fla. Star*, 491 U.S. at 530); *see also Bartnicki v. Vopper*, 532 U.S. 514 (2001).  To aid in the analysis, the Court promulgated a three-factor balancing test, which asks: (1) "whether the information [was] lawfully obtained and is of public significance"; (2) "whether the law in question serves 'a need to further a state interest of the highest order'"; and (3) "whether the statute serves 'the

10095847

significant interests' which the state purports to advance and is not underinclusive." *We Inform, LLC*, 758 F. Supp. 3d at 336-38.  This fact-specific approach is necessary because privacy cases balance free speech against the constitutional interest "in avoiding disclosure of personal matters." *Paul P v. Farmer*, 227 F.3d 98, 101 (3d Cir. 2000) (recognizing a constitutional "interest in one's home address by persons who do not wish it disclosed").

Last year, this Court concluded that Daniel's Law, a privacy statute, is properly evaluated using the standard articulated in *Florida Star*, not strict scrutiny.  *We Inform*, 758 F.Supp. 3d at 336-38.  In applying the *Florida Star* test to Daniel's Law, this Court determined that the balance of interests weigh in favor of upholding Daniel's Law.  *Id.* at 341.  First, the Court explained that the publication of a Covered Person's home address and unpublished phone numbers is not a matter of public significance.  *We Inform*, 758 F. Supp. 3d at 336-37.  Home addresses and unpublished telephone numbers are "not information that is necessary or pertinent for public oversight." *Id.* at 337.  Second, Daniel's Law serves a "state interest of the highest order," which is "to enhance the safety and security of judges, prosecutors, and other law enforcement officers so that they are able to carry out their official duties without fear of personal reprisal." *Ibid.*  Finally, Daniel's Law is not underinclusive, as it advances a compelling state interest: the protection of judges, prosecutors, and other law enforcement officers.  *Id.* at 337-38.  While the information Daniel's Law seeks to protect may be available in other places, the Court explained that "the right of privacy in compiled or computerized information does not evaporate simply because the information may be found in other places . . . . The fact that the home addresses and unlisted phone numbers of individual covered persons may be discovered elsewhere in various scattered locations does not make Daniel's Law underinclusive." *Id.* at 338.

Like the defendant in *We Inform*, as applied to the instant Defendant, Daniel's Law satisfies the *Florida Star* test. First, this Court and others have routinely held that the publication of a Covered Person's home address and unpublished phone numbers are not matter of public significance. *See e.g.*, *We Inform*, 758 F. Supp. 3d at 337. The fact that the home addresses and phone numbers in this case may be used in political fundraising efforts does not change the analysis. It is not a matter of public importance whether or not a certain political organization is able to solicit Covered Persons for political donations, using data compiled by a third party.

Next, Daniel's Law was enacted to "to enhance the safety and security of certain public officials in the justice system." *N.J.S.A.* 56:8-166.3. It is a "'well-known fact, amply documented by the record [in that case], that in recent years judges, prosecutors, police, correctional officers, and others in law enforcement have been the subject of an ever increasing number of threats and even assassinations,' some of which 'have been facilitated by malefactors obtaining the home address or unlisted phone number of their targets.'" *Kratovil*, 261 N.J. at 25-26 (quoting *We Inform*, 758 F.Supp. 3d at 337). "New Jersey's interest in protecting public officials from such threats and thus ensuring that they may carry out their duties without fear of harm to themselves or their families is clearly a state interest of the highest order under . . . *Florida Star*." *Id.* at 26.

Moreover, as applied to Defendant, Daniel's Law is narrowly tailored to promote a state interest of the highest order. The statute is limited to specific categories of public officials that the Legislature deemed to be at risk, and implicates only a Covered Person's home address and unpublished phone number. *Id.* at 26-27. There is no liability for the publication of a Covered Person's phone number until the Covered Person invokes the protection afforded them under Daniel's Law. *Id.* at 27.

Finally, the statute is neither underinclusive nor overinclusive. First, the statute is not underinclusive simply because "it treats private and business entities more strictly than public agencies." *We Inform*, 758 F.Supp.3d at 338. "All non-governmental entities are treated the same. . . . The law is not unconstitutional simply because the Legislature may not have come up with a complete answer to the problem of safety, security, and fear of reprisal of covered persons." *Ibid.* Second, the statute is not overinclusive because Plaintiffs issued take down notices for the thousands of Covered Persons whose home addresses and unpublished phone numbers appeared on Defendant's website. Defendant's inability to keep pace and comply with business obligations and privacy statutes in New Jersey is not an argument in support of over-inclusivity and this Court has already determined that the statute's definition of "disclose" is not vague or overbroad. *Id.* at 339. Defendant's arguments are neither new nor persuasive.

### C.    <u>Even Applying Strict Scrutiny, Daniel's Law Survives</u>

Defendant contends that Daniel's Law is subject to strict scrutiny, because it imposes a content based restriction on political speech. (ECF No. 16-1 at 27). Defendant, however, fail to even argue that home addresses and unpublished phone numbers are matters of public concern's arguments. (ECF No. 16-1). Instead, Defendant's arguments ignore this Court's prior decisions which declined to review Daniel's Law using strict scrutiny. *We Inform*, 758 F.Supp.3d at 336-38; *see also Kratovil*, 261 N.J. at 23-30. Specifically, the disclosure of addresses or unpublished phone numbers generally do not address any "matter of political, social, or other concern," and thus do not typically qualify for "heightened scrutiny" under the First Amendment. *Snyder v. Phelps*, 562 U.S. 443, 452 (2010). Disclosures of home addresses or unpublished phone numbers only qualify as speech on a matter of public concern in unusual cases in which the use of an address or phone number is "integral" to the speaker's "message." *Ostergren v. Cuccinelli*, 615 F.3d 263, 271 (4th Circ. 2010). In those cases, courts have already held that "Daniel's Law is written narrowly tailored to achieve [a] state interest of

the highest order." *Kratovil*, 261 N.J. at 29. Therefore, even if this Court, decides to reverse itself and apply strict scrutiny to Defendant's as-applied challenge to Daniel's Law, Defendant's motion still fails.

Here, Defendant concedes that Daniel's Law protects the safety of the Covered Persons, and that it was enacted with that purpose in mind. (ECF No. 16-1 at 35) (stating that Daniel's Law was enacted to protect the "judiciary, law enforcement leaders, and others . . . ."). Defendant's motion papers merely quibble over the Legislature's policy choices and argues that the Legislature should have written the law differently. As the Court has previously stated, "[s]imply because the law could have been written differently does not make it unconstitutional." *We Inform*, 758 F.Supp. at 339.

### 1.    Daniel's Law serves a compelling State interest.

"New Jersey's interest in protecting public officials from [] threats and ensuring that they may carry out their duties without fear of harm to themselves or their families is clearly a state interest of the highest order[.]" *Kratovil*, 261 N.J. at 26. It is a "'well-known fact, amply documented by the record, that in recent years judges, prosecutors, police, correctional officers, and other law enforcement have been the subject of an ever increasing number of threats and even assassinations,' some of which 'have been facilitated by malefactors obtaining the home address or unlisted phone number of their targets." *Ibid.* (citing *We Inform*, 758 F.Supp. at 337).

Here, Defendant argues that the goals of Daniel's Law are "far too sweeping and akin to generalized crime prevention to constitute a 'compelling government interest' that can survive strict scrutiny." (ECF No. 16-1 at 35). Defendant continues by arguing that the Legislature's goal of protecting the privacy of Covered Persons is not an interest in fixing a special problem, but rather akin to a generalized crime prevention statute. *Ibid.* As discussed *supra*, Defendant's arguments ignore the specific purpose for which Daniel's Law was enacted. *Kratovil*, 261 N.J. at 12-13. ("The statute

represents 'legislative action directly related to, and intended to honor, Daniel Anderl, the son of a federal judge, who was shot and killed in July 2020 at the judge's home by a person who had compiled a dossier of personal information about the judge including the judge's home address.'") (quoting *S. Judiciary Comm. Statement to A. 1649* (Oct. 22, 2020)).   "New Jersey's interest in protecting public officials from such threats and thus ensuring that they may carry out their duties without fear of harm to themselves or their families" is clearly a compelling state interest and not a generalized crime reduction statute or a "mild-prophylactic."  *Id.* at 26; (ECF No. 16-1 at 37).

Further evidencing the compelling state interest Daniel's Law is designed to address, on December 9, 2025, a coalition of Attorneys General from New Jersey, Minnesota, New Hampshire, Pennsylvania, West Virginia, and 37 other States' Attorneys General sent a letter to Congressional leadership requesting additional funding to protect judges and their families.  Letter from Attorneys General Platkin et al. to Senators Thune, Johnson, Schumer and Jeffries (Dec. 9, 2025), https://www.njoag.gov/wp-content/uploads/2025/12/2025-1210_Judicial-Security-Letter_FINAL.pdf (last visited Dec. 11, 2025).  The letter detailed the need for judicial security, and requested the Congress "provide the resources that are necessary to protect the safety of federal courts and federal judges."  *Ibid.*  The letter continues by outlining the findings from a plethora of reports, including from Chief Justice Roberts[3] and the United States Marshals Service[4], which concluded that

---

[3] Chief Justice of the United States, John G. Roberts, Jr., *2024 Year End Report on the Federal Judiciary*, at 5, available at https://www.supremecourt.gov/publicinfo/year-end/2024year-endreport.pdf (last visited Dec. 11, 2025).

[4] *FY 2024 Annual Report*, U.S. Department of Justice, United States Marshals Service at 47, available at https://www.usmarshals.gov/sites/default/files/media/document/Pub-2-2024-Annual-Report.pdf (last visited Dec. 11, 2025) ("[T]he number and intensity of concerning and potential threatening electronic communications related to protected persons and locations have increased.").

there is an increase in violence and threats aimed toward judges.  The letter emphasized the importance of ensuring the safety of the judiciary.

**2.    Daniel's Law is narrowly tailored.**

Plaintiffs incorporate and rely upon the arguments asserted in opposition to facial constitutional challenges asserted by defendants in other similarly situated matters, with respect to tailoring, under-inclusiveness and over-inclusiveness.  *See* § II, *infra*.  Plaintiffs, however, expand on the arguments previously asserted to note that the Defendant argues that it is mere "conjecture" that the availability of Covered Person's home address and unpublished phone numbers will lead to tragedy.  (ECF No. 16-1 at 39).  In enacting Daniel's Law, the New Jersey Legislature disagreed. *N.J.S.A.* 56:8-166.3 (stating that Daniel's Law was enacted "to enhance the safety and security of certain public officials" and their family members); *We Inform*, 758 F.Supp.3d at 337 (stating that it is a "the well-known fact, amply documented by the record [in that case], that in recent years judges, prosecutors, police, correctional officers, and others in law enforcement have been the subject of an ever increasing number of threats and even assassinations," some "<u>facilitated by malefactors obtaining the home address or unlisted phone number of their targets</u>.")(emphasis added).  New Jersey Supreme Court has also held that Daniel's Law is "narrowly tailored to promote the state interest it was enacted to serve."  *Kratovil*, 261 N.J. at 26.  The statute protects discrete categories of public officials, and it limited to two categories of information: home addresses and unpublished telephone numbers.  *Ibid.*

**II.    PLAINTIFFS RELY ON THE OTHER ARGUMENTS ADVANCED IN OPPOSITION TO OTHER DEFENDANTS' MOTIONS TO DISMISS.**

Defendant's motion for judgement on the pleading incorporates arguments previously briefed and argued in two cases: *Atlas Data Privacy Corp. v. Lightbox Parent, L.P.*, No. 1:24-cv-04105-HB (D.N.J.) (ECF No. 27) and *Atlas Data Privacy Corp. v. DM group Inc.*, No. 1:24-cv-04075-HB (D.N.J.) (ECF No. 59).  Pursuant to Local Rule 7.1(d)(4), Plaintiffs rely on their prior briefings in

14

those matters, *Lightbox Parent, L.P.*, (ECF No. 49), and  *DM Group Inc.*, (ECF No. 68), and request

that the motion be denied consistent with the Court's prior practices.

### III.    IN THE ALTERNATIVE, DISCOVERY ON DEFENDANT'S AS-APPLIED CONSTITUTIONAL CHALLENGE SHOULD BE ORDERED.

If the Court is not inclined to deny the motion outright, Plaintiffs respectfully request, in the

alternative, that the Court permit discovery on Defendant's as-applied constitutional challenge prior

to ruling on the motion.  Courts evaluating as-applied constitutional claims routinely recognize the

necessity of a developed factual record to determine whether the statute or regulation, as enforced

against a party, violates constitutional protections.  *See Atlas Data Privacy Corp. v. Restoration of*

*America*, 1:24-cv-04324-HB (D.N.J. Aug. 25, 2025) (ECF No. 71).

The Third Circuit recognized this principle in *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 677

F.3d 519, 533 (3d Cir. 2012).  In *Free Speech*, the court vacated the District Court's dismissal of an

as-applied First Amendment claim holding that "Plaintiffs should be afforded the opportunity to

conduct discovery and develop the record regarding whether the Statutes are narrowly tailored." *Ibid.*

In its later decision, in *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 974 F.3d 408, 417 (3d Cir. 2020),

the court emphasized again the need for discovery before dismissal of an as-applied claim.  Similarly,

in *Richmond Med. Ctr. For Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009), the Fourth Circuit

noted a division between "facial" challenges and "as-applied" challenges, explaining that as-applied

challenges are "based on a developed factual record and the application of a statute to a specific

person" and entail "case-by-case analyses." *See also Greater Baltimore Ctr. for Pregnancy Concerns,*

*Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 282 (4th Cir. 2013) ("[T]o properly employ

an as-applied analysis, the court was obligated to first afford [] discovery.") (citing *Richmond Med.*

*Ctr. For Women*, 570 F.3d at 172) (holding that "to properly employ an as-applied analysis, the court

was obliged to first afford the City discovery").

Federal Rule of Civil Procedure 26(b) supports this approach by permitting discovery for "any nonprivileged matter that is relevant to any party's claim or defense."  "The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial."  *See Burns v. Thiokol Chem Corp.*, 483 F.2d 300, 304 (5th Cir. 1973); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").  Here, the Court should permit discovery so that the adjudication of this challenge is based on a developed factual record regarding Daniel's Law as applied to Defendant.  The allegations raised by Defendant in their motion, including the allegation that Defendant is "engaged in political speech" (ECF No. 16-1 at 25) cannot be taken at face value.  If this Court declines to reject Defendant's motion outright, this Court should permit, as it has done in the past, discovery to assess these allegations.  *See Restoration of America*, (ECF No. 71).

16

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Judgment on the Pleadings.  In the alternative, if the Motion is not denied, Plaintiffs request discovery in order that they might address the as-applied challenge consistent with prior case law.

December 19, 2025

**PORZIO, BROMBERG & NEWMAN, P.C.**

By:____s/Vito A. Gagliardi, Jr._____

Vito A. Gagliardi, Jr., Esq.
Alfred R. Brunetti, Esq.
Sarah A. Wisniewski, Esq.
100 Southgate Parkway
Morristown, NJ 07960
Tel: 973-538-4006
Email: vagagliardi@pbnlaw.com

**PEM LAW LLP**
Rajiv D. Parikh, Esq.
Kathleen Barnett Einhorn, Esq.
Jessica A. Merejo, Esq.
1 Boland Drive, Suite 101
West Orange, New Jersey 07052

*Counsel for Plaintiffs Atlas Data Privacy Corporation, Patrick Colligan and Peter Andreyev*

17

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, I caused a copy of the foregoing *Brief in Opposition to Defendant Sterling Data Company LLC's Motion for Judgment on the Pleadings* to be served by the Court's CM/ECF system, which will send notification via email to counsel of record.


s/Vito A. Gagliardi, Jr.
Vito A. Gagliardi, Jr.

18

10095847