**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, PATRICK COLLIGAN and PETER ANDREYEV,

Plaintiffs,

v.

STERLING DATA COMPANY LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,

Defendants.

Case No.: 1:25-cv-09963-HB

*Motion Return Date:*
*January 20, 2026*

---

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF DEFENDANT STERLING DATA COMPANY LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS**

---

**REED SMITH LLP**
*Formed in the State of Delaware*
Diane A. Bettino, Esq.
David G. Murphy, Esq.
506 Carnegie Center – Suite 300
Princeton, New Jersey 08540
Tel. (609) 514-5947
Fax (609) 951-0824

*Attorneys for Defendant*
*Sterling Data Company LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENTS IN REPLY ............................................................................. 1

I. THE COURT MAY CONSIDER THE DOCUMENTS ATTACHED TO STERLING'S ANSWER AND MOTION ........................ 1

II. STERLING ENGAGES IN POLITICAL SPEECH AND IS ENTITLED TO FIRST AMENDMENT PROTECTION ............................... 3

III. THIS COURT HAS NOT PREVIOUSLY ADDRESSED STERLING'S CORE ARGUMENTS ........................................................... 8

IV. DANIEL'S LAW CHILLS STERLING'S PROTECTED POLITICAL SPEECH NOTWITHSTANDING ITS NOTICE MECHANISM ........................................................................ 10

V. DANIEL'S LAW DOES NOT SERVE A COMPELLING STATE INTEREST, PARTICULARLY WHEN CONFRONTED BY STERLING'S AS-APPLIED CHALLENGE ............................................ 14

CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlas Data Privacy Corp. v. We Inform, LLC*,
758 F. Supp. 3d 322 (D.N.J. 2024), *appeal pending*, No. 25-1555 (3d Cir.)....................9

*Cent. Me. Power Co. v. Me. Comm'n on Govt'l Ethics*,
144 F.4th 9 (1st Cir. 2025)....................4

*Citizens United v. FEC*,
558 U.S. 310 (2010)....................4, 5, 7

*Eu v. S.F. Cty. Democratic Cent. Comm.*,
489 U.S. 214 (1989)....................5

*Fed. Elec. Comm'n v. Ted Cruz for Senate*,
596 U.S. 289 (2022)....................4, 7, 12

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989)....................9

*Johnson v. Comm'n on Pres. Debates*,
202 F. Supp. 3d 159 (D.D.C. 2016)....................2

*Kratovil v. City of New Brunswick*,
261 N.J. 1 (2025) ....................11, 13

*Nat'l Coal. of Prayer, Inc. v. Carter*,
455 F.3d 783 (7th Cir. 2006) ....................5, 13

*Ostergren v. Cuccinelli*,
615 F.3d 263 (4th Circ. 2010) ....................11, 13

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
998 F.2d 1192 (3rd Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994)....................2

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) ....................2

*Singleton v. Wulff*,
428 U.S. 106 (1976) .......... 6

*Smith v. Daily Mail Pub. Co.*,
443 U.S. 97 (1979) .......... 9

*Williams-Yulee v. Florida Bar*,
575 U.S. 433 (2015) .......... 9

**Statutes**

*N.J.S.A.* 56:8-166.1(d) .......... 11

## PRELIMINARY STATEMENT

Defendant Sterling Data Company LLC ("Sterling") submits this reply memorandum of law in further support of its motion for judgment on the pleadings, pursuant to *Rule* 12(c), and for dismissal of the complaint filed on behalf of Plaintiffs Atlas Data Privacy Corporation, as assignee of individuals who are "Covered Persons" ("Atlas"), Patrick Colligan ("Colligan"), and Peter Andreye ("Andreyev") (collectively, "Plaintiffs"). Plaintiffs' opposition fails to present any compelling arguments that warrant denial of Sterling's motion, which should be granted in its entirety, and the Complaint should be dismissed with prejudice.

## ARGUMENTS IN REPLY

### I. THE COURT MAY CONSIDER THE DOCUMENTS ATTACHED TO STERLING'S ANSWER AND MOTION

Plaintiffs ask the Court to delay adjudicating Sterling's as-applied constitutional challenge by arguing "there is no factual record … [to] assess how the law actually applies to [Sterling]," that Plaintiffs did not plead Sterling engages in political speech in the Complaint, and that the Court may not consider Sterling's website in categorizing Sterling's speech. *Pls. Opp.* at 4–5. The Court should reject Plaintiffs' baseless contentions.

While Plaintiffs tellingly seek to delay adjudication of Sterling's as-applied challenge, Plaintiffs do not dispute that Sterling is a campaign finance vendor for candidates from the Democratic political party. Plaintiffs do not mention, let alone

oppose, news articles and information in the public realm about Sterling's political operations. *See Def. Br.* at 11–12, 14; *Murphy Cert.*, Exs. 1–3 (articles from Forbes, CNN, and Axios). Further, Plaintiffs' argument that Sterling's website is outside consideration fails because Plaintiffs expressly relied on Sterling's website in the Complaint and allege that Sterling is wrongfully disclosing information "on the Internet." *See Murphy Cert.*, Ex. 4 (Compl. at ¶¶ 35, 37, 51, 57, 60). It makes no difference that Plaintiffs, in using a form complaint, did not expound on Sterling's operations in their own pleading—plainly, Sterling's online presence is integral to the Complaint, which permits the Court to consider those documents in connection with this motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994); *Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014) (holding a plaintiff should not "evade accountability … simply by not attaching [documents] to his complaint.").

In any event, to eliminate all doubt, the Court may also consider data published by the Federal Election Commission ("FEC"), which requires federal campaigns, candidates, and committees to disclose campaign disbursements. Attached to the Supplemental Certification of David G. Murphy, Esq. ("*Supp. Murphy Cert.*"), as Exhibit 5, is the list of disbursements by numerous Democratic candidates and organizations to Sterling for its services—the Court may take judicial notice of the contents of FEC reports. *See, e.g.*, *Johnson v. Comm'n on Pres.*

*Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016) ("[T]he Court takes judicial notice of cited political and statistical facts that the [FEC] has posted on the web."). And if not apparent from the names of the candidates and committees compiled in the FEC report, each payor is part of or affiliated with the Democratic party. *See, e.g.*, *Supp. Murphy Cert.*, Ex. 6 (FEC Comm. Info. for Rep. Henry Cuellar); Ex. 7 (FEC Comm. Info. for Candidate Robin Peguero); Ex. 8 (FEC Comm. Info. for Candidate John Padora).

In sum, Plaintiffs do not posit any plausible dispute to the fact that Sterling is a campaign finance vendor for Democratic candidates, organizations, and causes. Accordingly, Plaintiffs objections to the Court's consideration of publicly-available and undisputed documents demonstrating that fact should be rejected.

## II. STERLING ENGAGES IN POLITICAL SPEECH AND IS ENTITLED TO FIRST AMENDMENT PROTECTION

Plaintiffs seek to avoid subjecting Daniel's Law to strict scrutiny by contending that Sterling essentially lacks standing to make a First Amendment challenge because it does not "engage in political speech." *Pl.'s Opp.* at 5–7. Plaintiffs first argue that Sterling, as a vendor for Democratic political campaigns, does not enjoy the same protections that its clients (*i.e.*, political candidates) would enjoy and, second, that only "communications concerning political change" are entitled to any heightened First Amendment protection. The Court should reject each of Plaintiffs' specious assertions.

Plaintiffs do not dispute that locating donors, soliciting donations, and collecting funds for political campaigns and causes is, itself, protected political speech. They contend, however, that such speech may not be protected depending on the identity of the speaker—if a political candidate directly developed and used his or her own analytics tool for these purposes, Plaintiffs agree that the candidate's work is protected by the First Amendment. *See Pls. Opp.* at 6. Plaintiffs, however, draw a non-existent line at a candidate hiring a politically-aligned vendor to undertake the same activity in service of that candidate's campaign. *See id.* That, according to Plaintiffs, strips the speech of being "political." *See id.*

Plaintiffs' contentions run afoul of common sense and bedrock First Amendment principles. "[T]he First Amendment generally prohibits the suppression of political speech based on the speaker's identity." *Citizens United v. FEC*, 558 U.S. 310, 350 (2010). It is also well-established that the strict scrutiny and exacting scrutiny standards summarized in *Fed. Elec. Comm'n v. Ted Cruz for Senate*, 596 U.S. 289, 305 (2022), are not applied to litigants that are exclusively political candidates or committees—the same analysis applies in the campaign finance context, regardless of the identity of the speaker participating in the campaign. *Cent. Me. Power Co. v. Me. Comm'n on Govt'l Ethics*, 144 F.4th 9, 22 (1st Cir. 2025) (holding private corporations' First Amendment rights to contribute to political campaigns were subject to both strict scrutiny and exacting scrutiny in

connection with a challenge to a state law limiting campaign contributions by foreigners); *Nat'l Coal. of Prayer, Inc. v. Carter*, 455 F.3d 783, 791 (7th Cir. 2006) (recognizing that "professional telemarketers," when engaging in political speech, are protected from state laws regulating telemarketing activity).

Contrary to Plaintiffs' unsupported argument, the Supreme Court has never conditioned First Amendment protection, in connection with campaign finance, on the speaker being a political candidate, political action committee, or any other political association (the formation of which is also protected by the First Amendment). *Citizens Un.,* 558 U.S. at 360 ("The fact that a *corporation, or any other speaker*, is willing to spend money to try to persuade voters presupposes that the people have the ultimate influence over elected officials. This is inconsistent with any suggestion that the electorate will refuse to take part in democratic governance because of additional political speech made b*y a corporation or any other speaker*.") (emphasis added, citations and quotation marks omitted); *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989) ("Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to identify the people who constitute the association.") (cleaned up). In other words, Plaintiffs present nothing that could transmogrify Sterling's clear "political" speech into anything

other than what it is—these protections apply whether the speaker is a voter, donor, candidate, vendor, or any other participant in the campaign.

Though it is not necessary, Sterling, as an agent of political candidates, campaigns, and organizations, also has standing to make this constitutional challenge on behalf of its clients. Plaintiffs insist that only political candidates have standing to challenge Daniel's Law for infringing political speech, as Sterling has here, *see Pls. Opp.* at 6, while ignoring that stifling Sterling's services infringes on its clients' highly-protected political speech. The Supreme Court addressed this situation, expounding on the concept of third-party protection of constitutional rights, in *Singleton v. Wulff*, 428 U.S. 106, 114–115 (1976). In *Singleton*, the Court held that a litigant may vindicate the constitutional rights of a third-party if: (i) "the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue," (ii) "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter," and (iii) the absent third party has "the ability to assert its own right." *Id.* at 115–117. All three of these considerations weigh in favor of Sterling having standing to assert this constitutional challenge.

For the first consideration, Sterling is hired by political candidates and campaigns because of the services it provides in the campaign finance and outreach process. It is plainly apparent that a candidate's political speech is inextricably

intertwined with Sterling's operations—locating, soliciting, and contacting donors. Likewise, for the second consideration, Sterling (and by extension, its clients) are in a defensive posture—Plaintiffs are seeking to stifle Sterling's operations and bury it with exorbitant liability, in essence destroying it as an enterprise and eliminating its clients' ability to engage in constitutionally-protected activity. Relatedly, for the third factor, Sterling is the named defendant—Sterling's clients likely could not be named as defendants (as they could not be labeled "databrokers" in good faith) and it would be preposterous to suggest that Sterling's clients should risk expense or exposure by intervening in this action. Though it remains to be seen at present, there is no realistic expectation that Sterling's clients would independently seek to enjoin enforcement of Daniel's Law by Atlas, the State, or the public at large. So, to the extent the Court even addresses the argument that "political" speech belongs solely to Sterling's clients, the outcome does not change—Plaintiffs' enforcement of Daniel's Law unconstitutionally infringes on protected political speech.

Finally, the Court need not entertain Plaintiffs' arguments that Sterling's speech is not political because it does not "concern[] political change." *Pls. Opp.* at 5–6. "The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens Un.*, 558 at 339 (cleaned up). This bedrock principle safeguards "the ability of a candidate … to finance campaign speech." *Ted Cruz for Senate*, 596 U.S. at 302. Plaintiffs misplace

reliance on an inapposite hypothetical, arguing that Square (a payment processing platform) would be entitled to vicarious First Amendment protection if any campaign uses its services, in the event Sterling were to succeed here. *Pls. Opp.* at 6–7. But Plaintiffs' weak analogy *supports* Sterling's position. Unlike any other non-substantive service provider or instrumentality, Sterling is a specific vendor for Democratic clients, its platform is used in furtherance of Democratic causes, and its services are specific to the campaign finance process. In other words, Sterling is not a content-neutral service provider. Plaintiffs' misplaced comparison with Square illuminates that Sterling's work is protected political speech.

For these reasons, the Court should reject Plaintiffs' contentions that strict scrutiny does not apply because the political speech of Sterling and its clients is not entitled to heightened First Amendment protection.

## III. THIS COURT HAS NOT PREVIOUSLY ADDRESSED STERLING'S CORE ARGUMENTS

In pursuit of their hope that the Court will not address the merits of Sterling's arguments, Plaintiffs incorrectly contend that this Court has already decided the issues presented in this motion. As Plaintiffs would have it, Daniel's Law could never be subject to strict scrutiny because the Court, in rejecting a separate facial challenge, already ruled out strict scrutiny through its application of the *Florida Star* test. *Pls. Opp.* at 9. The Attorney General's Office (the "AG") appears to generally join in this position as well (along with the generalized notion that Sterling's motion

is repetitive, when it clearly is not). *See Dkt. No. 30* (Dec. 19, 2025 Letter). Plaintiffs and the AG are wrong.

The Court indicated in *Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322 (D.N.J. 2024), *appeal pending*, No. 25-1555 (3d Cir.), that additional First Amendment challenges could be raised in as-applied challenges. *Id.* at 337. Further, the Court did not address the question now before it—whether Daniel's Law can survive strict scrutiny because it infringes political speech. *See generally id.* Rather, the Court analyzed *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), and *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979), which are cases that concern freedom of the press and matters of "public significance"—nothing in *We Inform*, *Florida Star*, *or Daily Mail* specifically addressed "political speech," particularly with respect to campaign finance. These words and concepts are absent from these opinions, other than this Court citing *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 455–56 (2015), noting that a regulation was *not* underinclusive though it permitted certain campaign communications and activities. *We Inform*, 758 F. Supp. 3d at 338–39.

The Court should reject Plaintiffs and the AG's request to bypass analyzing the issues presented in Sterling's motion. The analysis described in Sterling's motion has *not* been completed by the Court, and Plaintiffs' suggestion that these issues have already been decided is meritless.

## IV. DANIEL'S LAW CHILLS STERLING'S PROTECTED POLITICAL SPEECH NOTWITHSTANDING ITS NOTICE MECHANISM

Plaintiffs argue that even if strict scrutiny applies, Daniel's Law would survive underinclusivity and narrowly-tailored analyses, as applied to Sterling, because the impact of the law on Sterling is "*de minimis*," inclusion of phone numbers and addresses is "not a matter of public concern," and Sterling can otherwise comply with takedown requests without inhibition of its protected speech. *Pls. Opp.* at 7–12. Again, Plaintiffs are wrong and are asking the Court to apply an incorrect standard.

Plaintiffs attempt to shrug off underinclusivity and tailoring concerns with specious contentions about the impact of Daniel's Law on Sterling. First, they argue that judges and prosecutors are not ethically permitted to engage in partisan political activities, so the only potential recipients of campaign communications are law enforcement officers, thereby making "the impact on [Sterling's] ability to facilitate fundraising for their clients ... *de minimis*." *Pls. Opp.* at 7–8. This is wrong on multiple levels. The law enforcement community, by Plaintiffs' own allegations in the Complaint, is obviously the largest subset of "Covered Persons." Andreyev and Colligan allege that they represent more than 30,000 "active" law enforcement officers, which combined with their family members and retired personnel, would comprise hundreds of thousands of people in the state of New Jersey. *Murphy Cert.*, Ex. 4 (Compl. at ¶¶ 18–19).

With respect to judges and prosecutors being unable to participate in politics, the definition of "covered person" includes retirees who would obviously not be subject to these restrictions. *See N.J.S.A.* 56:8-166.1(d). Further, nothing about Plaintiffs' takedown requests specifically indicate a covered person's occupation. *See Murphy Cert.*, Ex. 4 (Compl. at ⁋⁋ 31–32). Even accepting Plaintiffs' position that active judges and prosecutors may not, under any circumstances, privately contribute to political campaigns, Plaintiffs' argument requires Sterling to have clairvoyance about every recipient. Nothing about the ethical boundaries for judges and prosecutors dislodges the clear chilling effect of Daniel's Law on protected political speech, nor do they remove the defect with Daniel's Law in that it does not meaningfully cover activity that would serve the State's purported interests.

Moreover, Plaintiffs do not actually respond to Sterling's arguments about political speech, as they ask the Court to disregard the straightforward analysis required by the Supreme Court. Plaintiffs ask the Court to rely on *We Inform*, along with *Kratovil v. City of New Brunswick*, 261 N.J. 1 (2025), and *Ostergren v. Cuccinelli*, 615 F.3d 263 (4th Circ. 2010), in support of a proposition that this Court (and no court in general) has ever advanced—that strict scrutiny never applies in the face of a purported privacy statute and that Daniel's Law would nevertheless survive that scrutiny in any and all circumstances. *Pls. Opp.* at 9–12. Besides the fact that none of these cases actually stand for that proposition, Plaintiffs speciously contend

that Sterling's need for addresses and phone numbers, in service of its clients, is "not a matter of public concern." *Id.* Common sense defeats these arguments.

As noted above, there is no plausible dispute that political candidates, campaigns, and organizations have a sacrosanct right to engage in political campaigning activity, including contacting, soliciting, and collecting from donors. Further, as set forth in detail in Sterling's opening brief, the notice requirement in Daniel's Law does not shed the law's unconstitutional application to Sterling and its clients, as Sterling is required to self-censor truthful information and restrict information sought by political campaigns because Daniel's Law may punish the mere possession of an address on a computer system, regardless of whether it was the subject of a takedown request or has ever made its way into a searchable list.

As the Supreme Court has made unequivocally clear, there is "only one permissible ground for restricting political speech: the prevention of 'quid pro quo' corruption or its appearance." *Ted Cruz for Senate*, 566 U.S. at 306 (citations omitted). Daniel's Law plainly does not satisfy that criteria, and this Court's prior *Florida Star* analysis is completely inapplicable. Political campaigning, *i.e.*, core political speech, is much different than generalized analysis for "matters of public concern." In *Kratovil*, the specific street address and phone number of a police chief, though matters of public concern, were not necessary for the plaintiff's journalistic argument about officers policing communities in which they do not reside—the

journalist could make this argument by highlighting only the town where the chief lived, without a specific street address. 261 N.J. at 24. Meanwhile, in *Ostergren* (which Plaintiffs cite, though it strongly cuts against their arguments), the Fourth Circuit Court of Appeals held that enforcement of a state law requiring a privacy advocate to redact republished social security numbers violated her First Amendment rights and was not narrowly-tailored to the state's interest in protecting privacy, even though her republication of social security numbers undercut core aspects of her message and advocacy. 615 F.3d at 286–87.

For Sterling, addresses and phone numbers of donors are plainly necessary pieces of information for the protected speech at issue. Sterling and its clients' freedom to speak and associate cannot be accomplished without necessary contact information. And to be clear, it is well-established that telemarketing for political and campaigning purposes is protected activity. *See, e.g.*, *Carter*, 455 F.3d at 791 ("[I]t is not surprising that the Indiana Attorney General has fashioned an 'implicit exception' for political speech, even if that speech comes from professional telemarketers. Political speech has long been considered the touchstone of First Amendment protection in Supreme Court jurisprudence, and courts are prone to strike down legislation that attempts to regulate it.").

For these reasons, the Court should reject Plaintiffs' invitation for the Court to apply its prior *We Inform* analysis to this as-applied challenge in a cookie-cutter

fashion, not review Daniel's Law with strict scrutiny, and, from there, apply a blanket conclusion that Daniel's Law is not underinclusive or otherwise improperly tailored. Daniel's Law cannot survive strict scrutiny in this as-applied challenge.

## V. DANIEL'S LAW DOES NOT SERVE A COMPELLING STATE INTEREST, PARTICULARLY WHEN CONFRONTED BY STERLING'S AS-APPLIED CHALLENGE

Plaintiffs ask the Court to accept that Daniel's Law, in its entirety, serves a compelling government interest. *Pls. Opp.* at 12–13. However, to date, nobody has meaningfully challenged this notion, and no Court has completed this analysis. The fact is, Daniel's Law may serve, within the confines of the First Amendment, a compelling purpose for a small, specific, and individualized group that requires heightened protection. But in its current form, its sweeping application to hundreds of thousands of people makes it inescapably a generic "crime prevention" statute.

Nevertheless, Plaintiffs insist that the State's compelling interest in enforcing Daniel's Law, as well as its ability to withstand overinclusivity and underinclusivity challenges, is a unanimous view of the Legislature and public officials, and that Sterling is merely "quibbl[ing] with Legislative intent." *Pls. Opp.* at 12, 13. Plaintiffs miss the point, which is manifest by their citation to a letter by the National Association of Attorneys General asking for more security measures to protect judges, which is by far the smallest subset of covered persons.

Worse, cracks have already formed in the Legislature's support for Daniel's Law in its current form. New Jersey State Senator Gordon Johnson has publicly remarked about the current version of Daniel's Law being underinclusive, overinclusive, and not meeting the State's actual interests: "[r]ight now, we have a law that doesn't work for anyone and could be struck down by the courts," noting that certain loopholes need to be closed, including provisions that allow "predatory companies" (which is a clear reference to Atlas) "to manipulate the statute for financial gain." *Supp. Murphy Cert.*, Ex. 9. Indeed, the proposed amendments to Daniel's Law remove the problematic "Assignee" and "Disclosure" definitions and expand the compliance period to forty-five days, among other changes. *Supp. Murphy Cert.*, Ex. 10 (Text of Senate Bill S4884).

To be clear, the proposed amendments still present core First Amendment issues with inhibiting protected political speech, but the point is that, as a matter of public record, the Court should reject Plaintiffs' unsupported contention that Daniel's Law, in its current form, properly serves a viable compelling state interest.

## CONCLUSION

For these reasons, Sterling respectfully request that the Court grant its motion and dismiss Plaintiffs' Complaint with prejudice.

**REED SMITH LLP**

*/s/ David G. Murphy*
David G. Murphy, Esq.

Dated: January 9, 2026