IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ATLAS DATA PRIVACY          :          CIVIL ACTION
CORPORATION, et al.         :
                            :
        v.                  :
                            :
STERLING DATA COMPANY LLC,   :          NO. 25-9963
et al.                      :

MEMORANDUM

Bartle, J.                                    April 22, 2026

Plaintiffs Atlas Data Privacy Corporation ("Atlas")
and two individual plaintiffs have sued defendant Sterling Data
Company LLC ("Sterling") for violations of a New Jersey statute
known as Daniel's Law.  The case was originally filed in the
Superior Court of New Jersey and then timely removed pursuant to
28 U.S.C. § 1332(a).  Before the court is the motion of Sterling
under Rule 12(c) of the Federal Rules of Civil Procedure for
judgment on the pleadings.  Sterling maintains that Daniel's Law
is unconstitutional as applied under both the United States
Constitution and the Constitution of New Jersey.[1]  It also makes
a facial challenge.

---

[1]    The defendant makes no separate argument or analysis about
the New Jersey Constitution.  Generally, the New Jersey Supreme
Court interprets the free speech clause of the state
constitution as coextensive with the First Amendment of the
United States Constitution, except in certain circumstances not
relevant here.  Kratovil v. City of New Brunswick, 336 A.3d 201,
211 (N.J. 2025).

I

The standard for evaluating a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is the same as the familiar standard used for evaluating a motion to dismiss under Rule 12(b)(6).  Revell v. Port Auth. of N.Y., N.J., 598 F.3d 128, 134 (3d Cir. 2010).  Thus, the court must determine whether the well-pleaded factual allegations, taken as true, "plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The crucial difference between a Rule 12(c) and Rule 12(b)(6) motion is that a Rule 12(c) motion may be filed after the pleadings are closed.  See Fed. R. Civ. P. 12(c).  Thus, the court may consider facts presented in both the complaint and the answer and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  Bedoya v. Am. Eagle Express Inc., 914 F.3d 812, 816 n.2 (3d Cir. 2019).  The movant must clearly establish that no material issue of fact remains and therefore, that he or she is entitled to judgment as a matter of law.  Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988) (quoting Soc'y Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)).  The court may also consider documents integral to or explicitly relied upon in the pleadings.  Mele v. Fed. Rsrv. Bank of N.Y., 359 F.3d 251, 256

-2-

n.5 (3d Cir. 2004).  The court may also take judicial notice of matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

II

Daniel's Law was enacted by the New Jersey Legislature in the wake of the attempted assassination of United States District Judge Esther Salas.  A disgruntled lawyer appeared at her home, killed her son, and wounded her husband, before fleeing.  The assailant had obtained her home address on the internet.

Daniel's Law provides that judges, prosecutors and other law enforcement officers as well as their immediate family members ("covered persons") may request in writing that any person, business, or association not disclose or make available their home addresses and unpublished telephone numbers.

The person, business or association shall comply with the request not later than ten business days after receiving notification.  For failure to comply, Daniel's Law provides for actual damages but not less than liquidated damages at the rate of $1,000 per violation and punitive damages for willful or reckless disregard of the law.

Daniel's Law authorizes covered persons to assign their claims.  In this case, thousands of covered persons have made assignments to the plaintiff Atlas whose website they have

-3-

used to notify Sterling to cease disclosure of their personal contact information.

The New Jersey Legislature declared in Daniel's Law its purpose and public policy:

> This act shall be liberally construed in order to accomplish its purpose and the public policy of this State, which is to enhance the safety and security of certain public officials in the justice system, including judicial officers, law enforcement officers, child protective investigators[,] . . . and prosecutors, who serve or have served the people of New Jersey, and the immediate family members of these individuals, to foster the ability of these public servants who perform critical roles in the justice system to carry out their official duties without fear of personal reprisal from affected individuals related to the performance of their public functions.

N.J.S.A. 56:8-166.3 (emphasis added).  Daniel's Law, as this court has previously determined, seeks to achieve its goals by protecting the privacy of covered persons with respect to their home addresses and unlisted phone numbers.  Atlas Data Priv. Corp. v. We Inform, LLC, 758 F. Supp. 3d 322, 335-36 (D.N.J. 2024).

### III

The court at this stage accepts as true the averment of plaintiffs that Sterling discloses, rediscloses, or makes available on the internet or otherwise the home addresses and/or unlisted home telephone numbers of covered person.  The court

-4-

also takes judicial notice of information from the Federal Election Commission that Sterling is a company engaged in assisting candidates, campaigns, and nonprofits with fundraising efforts, with a variety of products and services.  It is undisputed that it compiles and sells lists of names, addresses, and other information of prospective contributors to aid candidates and their campaigns.  Its clients include "political campaigns, political organizations, NGO's, non-profits, and other persons or entities looking for fundraising, financing, or similar services."  Sterling points out that its clients are only Democrats and considers itself "a Democratic campaign finance and fundraising company."

Unlike other entities that Atlas has sued, Sterling maintains that as a vendor for political campaigns and causes, it is engaged in political speech on behalf of its clients and enjoys the same First Amendment protections as they do. Specifically, Sterling argues that Daniel's Law inhibits its ability to find and supply names and addresses of potential supporters from whom candidates can then solicit donations. Plaintiffs counter that Sterling is not engaged in political speech as it is merely a vendor quite distinct from candidates and their campaigns.

Sterling's business, at least in part, is to support candidates and political campaigns.  That support includes

-5-

obtaining addresses and phone numbers of potential contributors whom it believes will support the efforts of its clients. Without organizations like Sterling, political campaigns would be greatly handicapped.  The court agrees that Sterling's business is sufficiently integrated with candidates and campaigns so as to be engaged in political speech.

IV

Sterling, as noted, argues that Daniel's Law is unconstitutional as applied because it is infringing on its political speech.  A law is unconstitutional as applied when it runs afoul of the First Amendment[2] with respect to the particular activities of the plaintiff even though it may not be unconstitutional on its face.  United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010).  The remedy is usually designed to affect the litigants only and not non-parties so long as the litigants will be protected.  See United States v. Nat'l Treasury Emps. Union, 513 U.S. 454, 477-78 (1995).

There is no question that the First Amendment protects political speech, not only of individuals but also of corporations.  Citizens United v. Fed. Election Comm'n, 558 U.S.

---

2    The First Amendment is incorporated into the Fourteenth Amendment, and it is the Fourteenth Amendment that applies here to the state.  Bigelow v. Virginia, 421 U.S. 809, 811 (1975). In the interest of brevity, the court will simply reference the First Amendment.

310, 342 (2010).  As the Supreme Court has stated in Eu v. San Francisco County Democratic Central Committee, 489 U.S. 214, 223 (1989) (citation modified), "debate on the qualifications of candidates is integral to the operation of the system of government established by our Constitution."  The Court further emphasized that the First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office."  Id. (citation modified).  The Supreme Court more recently reiterated in Federal Election Commission v. Cruz, 596 U.S. 289, 302 (2022):

> The First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office." . . .  It safeguards the ability of a candidate to use personal funds to finance campaign speech, protecting his freedom "to speak without legislative limit on behalf of his own candidacy." . . .  This broad protection, we have explained, "reflects our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open."

The Supreme Court has held in various decisions that any burden on political speech is subject to strict scrutiny - meaning any restriction must further a compelling interest and be narrowly tailored to achieve that interest.  See, e.g., Ariz. Free Enter. Club's Freedom Club PAC v. Bennett, 564 U.S. 721, 734 (2011); Citizens United, 558 U.S. at 339-40.  Content-

-7-

neutral laws, however, are subject to a lower level of scrutiny. See Reed v. Town of Gilbert, Arizona, 576 U.S. 155, 163-64, 166 (2015).  In the area of campaign finance, the government may impose restrictions only to prevent quid pro quo corruption or the appearance of quid pro quo corruption.  See Buckley v. Valeo, 424 U.S. 1, 26-27 (1976).  Contribution limits, nonetheless, are subject to a rigorous but less demanding standard of review than strict scrutiny. See Id. at 21.

Daniel's Law, as explained above, allows judges, prosecutors, law enforcement officers and their immediate family members to direct persons, businesses, and other entities not to disclose or make available their home addresses and unlisted phone numbers.  The statute does not make it illegal to gather this information.  Furthermore, it does not make it illegal to disseminate this information unless the covered person notifies the possessor in writing not to do so.  The possessor of the information has ten business days to comply.  Only then is the possessor subject to damages.  It is the covered person, not the State of New Jersey, who makes the decision that the information is not to be disclosed or made available.  Significantly, Daniel's Law is not a campaign finance statute and does not treat political speech differently from any other kind of speech.  The purpose for which a private person or entity may want to use home addresses or unlisted phone numbers of covered

persons does not matter.  Daniel's Law is a content-neutral statute.

V

The parties cite numerous Supreme Court decision's concerning political speech.  The most apposite case is <u>Barr v. American Ass'n of Political Consultants, Inc.</u>, 591 U.S. 610 (2020).  There, the plaintiffs were political and non-profit organizations that asserted a right under the First Amendment to make political robocalls to cell phones.  Plaintiffs and their members sought to make these calls "to discuss candidates and issues, solicit donations, conduct polls, and get out the vote." <u>Id.</u> at 617.

In 1991, as a result of consumer outrage, Congress passed and the President signed the Telephone Consumer Protection Act ("TCPA") which prohibited virtually all robocalls, which were occurring at the rate of tens of millions per day.  The TCPA provided for damages of up to $1,500 per violation or three times actual monetary losses.  The rationale for the TCPA was to protect those who have cell phones and home phones from invasion of privacy.  In 2015, Congress added an exception to the broad prohibition.  It allowed robocalls to collect a debt owed to or guaranteed by the Government.

The plaintiffs in <u>Barr</u> asserted that the entire TCPA was unconstitutional on the ground that the 2015 exception

favors debt-collection speech over political and other speech. While there was no majority opinion, seven of the nine justices concurred in the judgment which severed the debt-collection exception from the rest of the TCPA and declared the exception unconstitutional since it favored debt-collection speech over others.  The Court upheld the TCPA as it existed in 1991 – banning virtually all robocalls.

The opinion of Justice Kavanaugh, who announced the judgment of the Court, was joined in full by the Chief Justice and Justice Alito.  In that opinion Justice Kavanaugh wrote:

> A generally applicable robocall restriction would be permissible under the First Amendment.  Extending the robocall restriction to those robocalls [debt-collector robocalls] raises no First Amendment problem.

Id. at 633 (emphasis added).

Justice Breyer, joined by Justices Ginsburg and Kagan, concurred in the judgment with respect to severability and dissented in part. These Justices also agreed that the TCPA without the debt-collector exception was constitutional. Justice Breyer wrote: "As Justice Kavanaugh notes, the government-debt exception provides no basis for undermining the general cell phone robocall restriction."  Id. at 646.

-10-

Finally, Justice Sotomayor in a separate opinion concurred that the TCPA stands without the debt-collector exception.[3]  Id. at 637.

Thus, seven justices agreed that the TCPA, a privacy statute, was constitutional in banning robocalls containing political speech as long as all speech was treated similarly. If the original ban including political speech was unconstitutional, there would have been no need to sever out the debt-collection exception to save the TCPA.

Daniel's Law like the 1991 TCPA does not treat political speech differently from other kinds of speech.  Both are content-neutral.  The TCPA prohibits all robocalls regardless of the wishes of individual cell phone users.  In doing so, it does have the effect of limiting one tool which would otherwise be available to candidates for office, but that limitation does not make the TCPA unconstitutional.  Similarly, Daniel's Law affects the ability of candidates to solicit covered persons who send the Law's opt out notice since it impedes the ability of candidates to obtain their home addresses

---

[3]    Justice Gorsuch agreed that the exception violated the First Amendment but not for the reasons stated by Justice Kavanaugh and disagreed with the remedy the Court endorsed. Justice Gorsuch would have granted an injunction in favor of plaintiffs to be able to make political robocalls.  Id. at 652-54.  Justice Thomas concurred with Justice Gorsuch on the remedy.  Id. at 648.

-11-

and unlisted phone numbers.  Yet Daniel's Law, if anything, is less restrictive of speech than the TCPA.  It does not ban ab initio the disclosure of all home addresses and unlisted phone numbers of covered persons.  It does so only after the covered person makes a written request that this information not be disclosed or made available.

The cases such as <u>McCutcheon v. Federal Election Commission</u>, 572 U.S. 185 (2014), <u>Buckley</u>, 424 U.S. 1 (1976), and <u>Cruz</u>, 596 U.S. 289 (2022), cited by Sterling are inapposite. <u>McCutcheon</u> and <u>Buckley</u> dealt with federal restrictions on the ability of willing donors to contribute more than a specified amount to candidates and political campaigns.  <u>Cruz</u> concerned repayment by willing donors after an election of a candidate's personal loan to his campaign.  In contrast, Daniel's Law is designed to protect those who do not want to be solicited for campaign contributions.  While Sterling is correct that the pool of potential donors may have shrunk somewhat because of Daniel's Law, it has shrunk because covered persons of their own volition do not want to be part of the pool and want to be left alone.

The Supreme Court did not agree in <u>Barr</u> as to the standard to be applied in deciding on the constitutional issue before it.  Nonetheless, a majority of the Court held that the TCPA as it existed in 1991 was constitutional and did not infringe on the plaintiffs' First Amendment right to political

-12-

speech.  The plaintiffs in Barr and Sterling are engaged in similar endeavors.  If the TCPA is constitutional as applied to plaintiffs in Barr, surely Daniel's Law is constitutional as applied to Sterling.

Much is made in the briefs as to the standard this court must apply in deciding the constitutional issue presented. Sterling urges the court to impose the strict scrutiny test on Daniel's Law.  The majority in Barr opposed the use of this test at least to the extent a law is content-neutral and in this instance endorsed a less restrictive test.  The TCPA, without the debt-collector amendment, is content-neutral like Daniel's Law.

Justice Kavanaugh, the Chief Justice, and Justices Thomas and Alito applied the strict scrutiny test only to the TCPA to the extent it is content based with the debt-collector exception.  Barr, 591 U.S. at 621, 649-50.  Justice Sotomayor would subject the TCPA with the debt-collector exception to intermediate scrutiny.  Id. at 636-37.  Finally, Justice Gorsuch would apply strict scrutiny when "the government seeks to censor speech based on its content, favoring certain voices and punishing others."  Id. at 649.  The Court did not impose the strict scrutiny standard in Barr, and that standard is not germane here.  The Court upheld the 1991 TCPA without agreement

-13-

by the majority as to the test to be used to decide whether it passes constitutional muster.

Nonetheless, even if strict scrutiny here is the appropriate standard of review because political speech is implicated, Daniel's Law as applied passes muster. While Sterling appears to argue the contrary, there can be no doubt that Daniel's Law serves a compelling state's interest in seeking to protect judges, prosecutors, and other law enforcement officials from ever increasing harm and threats of harm.

Sterling further argues that Daniel's Law fails as applied here because it is underinclusive. This argument is without merit. The court dealt extensively with this issue in its November 26, 2024 Memorandum in <u>Atlas Data Privacy Corp. v. We Inform, LLC</u>, 758 F. Supp. 3d 322, 337-39 (D.N.J. 2024). For the reasons stated here, Daniel's Law is not underinclusive.

Sterling also maintains that Daniel's Law is unconstitutional as applied because it is overinclusive. It asserts that it is a general crime statute that is seeking to prevent disclosure of the home addresses and unlisted phone numbers of thousands of covered persons in order to deal with a miniscule number of threats. In Sterling's view, Daniel's Law restricts much more speech than is necessary to address the problem. Daniel's Law, it must be remembered, came into being

-14-

as a result of the attempted assassination of Judge Salas by a disgruntled lawyer who obtained the home address of Judge Salas on the internet.  Unfortunately, such incidents and threats of violence are occurring with ever increasing frequency.  The restricted information of covered persons under the Law is quite limited – home addresses and unlisted telephone numbers.  The Legislature's choice in Daniel's Law is not overinclusive and is narrowly tailored to address an extremely serious and widespread problem.

Individuals and entities have the right under the First Amendment to engage in political speech.  In accordance with the analysis in <u>Barr</u>, they do not have the right to require the unwilling to be subjected to political speech via their phones or their mail under the circumstances presented here.

The motion of Sterling for judgment on the pleadings on the ground that Daniel's Law is unconstitutional as applied will be denied.

VI

Sterling also makes a facial challenge to Daniel's Law.  Its argument fails for the reasons stated by the court in <u>Atlas Data Privacy Corp. v. We Inform, LLC</u>, 758 F. Supp. 3d 322 (D.N.J. 2024).  The motion of Sterling for judgment on the pleadings on the ground that Daniel's Law is unconstitutional on its face will be denied.

-15-

-16-

VII

Separately, Sterling joins in other arguments advanced in support of motions to dismiss for failure to meet pleading standards filed by defendants in similar Daniel's Law cases, which fail for the reasons stated in Atlas Data Privacy Corp. v. We Inform, LLC, No. CV 24-10600, 2025 WL 1787566 (D.N.J. June 27, 2025).  The motion of Sterling for judgment on the pleadings on the ground that plaintiffs failed to meet the pleading standards under Rule 8 of the Federal Rules of Civil Procedure and Iqbal and Twombly will be denied.

BY THE COURT:


/s/  Harvey Bartle III
                                          J.